Court. You may be seated. Our first case in the morning is in the marriage of Susan Pauley versus Lauren Pauley and Caterpillar. For the account, Mr Storm for the athlete, Mr Ty, you may proceed. Thank you, Your Honor. May it please the court, Timothy Storm on behalf of the appellant, Susan Pauley, now known as Susan Vogt. The parties in this case agree on many things. The facts are essentially uncontested as you glean from reading three. Susan Vogt obtained an order to have child support payments deducted from her husband's paycheck. Her husband, Lauren Pauley, was employed by the withholding notice and order on Caterpillar and Caterpillar received it. Caterpillar withheld an incorrect amount from 19 of Pauley's paychecks in a row before Caterpillar corrected the error. There were also an additional 28 instances of under withholding and two paychecks worth of non withholding. Those instances are not disputed from factual point of view, but Caterpillar argues that they should not be part of this case as it was tried, and I'll address that in a moment as the second issue on the field. Those are essentially the uncontested facts of the case. The parties also agree to the applicable law, which is Section 35A of the Income Withholding for Support Act. The parties even agree on the meaning of most of that act. But the real bone of contention in the main issue on this appeal comes down to one word in the Withholding Act, and that word is knowingly. The act provides for civil liability to the child support recipient when a payer, quote, knowingly fails to withhold the amount designated in the income withholding notice. Caterpillar doesn't dispute that it failed to withhold the correct amount designated in the notice, but it does dispute that it did so knowingly. The statute doesn't include a definition of the word knowingly, but to determine what the legislature meant when it enacted that statute and used that term knowingly, it's not appropriate to focus only on that one word, but one has to look at the statute as a whole, the purposes of the statute, and the background against which the statute was enacted. Now, what we're talking about here when it gets right down to it is enforcing the court order. Courts always have the power to enforce the court order, and there's always a knowingly requirement embodied in that ability to enforce the order. Knowingly means was the person properly before the court? Was the person given proper notice of the requirements of the order? Were the directives of the order clear and specific? Did the person have the means and ability to comply with the directives of the order? And did the person, in light of all of that, comply with the order? So when this section of the Enforcement Act was, or the Withholding Act, I should call it, was enacted, it was not against a blank slate. The court always had the power to enforce an order, and here there is this additional statutory layer, the purpose of which is clear, and that is to assure that recipients of child support would receive their has never challenged that as a statutory purpose. And that purpose is where the interpretation of the statute ought to begin. Several cases have addressed the meaning and application of that section and its predecessor in the Marriage and Dissolution of Marriage Act, and we've addressed them in our brief. They include, as you know, Dunahee, which is a Fourth District case from 1995, Thomas, Fourth District case from 2004, Gullah, a Second District case from 2008, and Vaughn, a First District case from 2010. Those cases are discussed extensively in our brief, and the appropriateness of the penalty was upheld in Dunahee, Gullah, and Vaughn. What those cases taken together have in common, in our view, is that each of the employers in those cases didn't set up a system that was designed to fulfill the employer's withholding act, even where there was a minimal burden on the employer to do so, and the employer had it within its power to do so. That's the case with How do you compare the burden in Dunahee with the burden in Caterpillar? Well, Dunahee is a smaller operation, and in Dunahee, there was not only a minimum burden, but knowingly, it appeared to be willful, and as if child support wasn't that big a deal, and they just wanted to save a postage stamp. Whereas here, one might infer it's the enormity of the process, depending upon, I don't know how much evidence was put in regarding the number of employees, the number of individuals who have these kinds of orders, the overarching responsibility of Caterpillar to a lot more employees. And I don't think, frankly, there was specific evidence on the overall volume of the obligation, but I didn't mean to interrupt. No, go ahead. I'm thinking out loud. Well, I think the beginning of your question, if I understand it correctly, was how do I compare the burden here with the burden in Dunahee? Well, Dunahee, basically, there was a flippancy about the way they handled it. Here, it appears to be, yes, could they have done more, but it looks as if there was effort expended. They were not, it seemed in Dunahee, it was almost specific and intentional toward that employee's dependence. Well, I think what Dunahee, the message of Dunahee is that there was not an attention to fulfilling the statutory requirements. In other words, you made reference to the fact that, yes, they withheld the money, and apparently they did so in a timely way, but they just had a system in place where they chose not to forward it on, on the schedule that they were supposed to have done. So the question then becomes, how do you compare that to Caterpillar? Well, here in Caterpillar, and the record is very clear on this, the trial record, Caterpillar certainly had a system, a department, which handled child support enforcement. There's no doubt about that, but what Caterpillar employees told us very clearly was the system amounted to one person. One person gets the order, looks at it, inputs it into the system, and that's the end of it. There's no double check, there's no quality control to speak of, and that's really been exactly our point in this case, Your Honor. In order to fulfill the requirements under the court order, Caterpillar needed to do something more than simply say, we will give an order to one person, let that person do what that person is going to do, and leave it at that. There has to, yes, there's a system, but there has to be a system that provides reasonable assurance that the requirements of the order are going to be fulfilled. And to say, as Caterpillar seems to be veering towards saying, this happened because we're so big, and we have so many people, and we have so many processes, respectfully is not an answer to the question, because the order is an order to Caterpillar, not to individual employees within Caterpillar. And so just as in Dunahee, where you say there was a flippancy, I don't know if I would categorize it in one way or the other, but there was certainly a situation where the Dunahee employer did not put in place a system that would comply with the requirements of the order and the requirements of the support notice. That's exactly the situation that we have with Caterpillar. You put on a witness that talked about this happening to other people? There was a witness who was an attorney for a collection company that said they had, in a number of cases, served on Caterpillar orders for wage garnishment or wage deduction or withholding that I think the evidence was in seven instances that he knew of, and the records of those instances were included in the trial record, Caterpillar had failed to withhold. And so in a sense, there is with that a pattern. But I hasten to add, Your Honor, that a pattern is not a requirement under 35A of the Withholding Act, not to say that you suggested it was, but what we're talking about here is whether Caterpillar, in this instance with this party, properly withheld. And if we want to look at a pattern, the pattern that, in fact, in this particular case there were 19 consecutive underwithholdings by Caterpillar, that's a pattern. Subsequent to that, there were 28 additional underwithholdings by Caterpillar, and Caterpillar completely stopped withholding two paychecks early. Mr. Storm, what you've talked about to this point deals with the failure to withhold on a contemporaneous basis by CAD. I'm curious about what happens after CAD is notified of the failure to withhold and they receive the court order. There was a letter that CAD sent dated October 16th of 2009 by Karen Kilpatrick, and that was acknowledging the withholding error. And apparently at that point there was an arrearage of about $3,300, but that $3,300 wasn't paid until February of 2010. Does the penalty, is there any penalty involved in that period of time from October to February, or is the penalty only relative to the contemporaneous failure to withhold? Do you understand the question? I'm not sure I do. Let me see if I do. Well, let me, then let me rephrase. Okay. Is any part of your appeal and claim here based on the failure by CAD to pay after October the 16th, but prior to February 1st of $3,300, or is it only limited to its failure to contemporaneously withhold pursuant to the withholding order? Well, I think the proper answer to your question, and I don't mean to be both, the withholding order establishes the obligation. And under Section 35A, the way the penalty is calculated is on a per day basis from when the payment should have been made, in other words, when the paycheck was, or within a week of when the paycheck was issued, up to the time the payment was actually made. To be specific, Your Honor, attached to the final written argument in the trial court, and I can give you the record citation shortly, votes' written closing argument was at C820 through C836. As a part of that, there were two charts attached showing exactly what the calculation of penalties were from the starting point to the ending point and how much it ends up being. Those are Exhibits A and B. So that will show you exactly what the time intervals are and how the calculation was made. Did I address your question? Not particularly. Okay, I'm sorry. And so let me just ask you this. There was a period of withholdings that should have been made that weren't. Nineteen separate withholdings that weren't made, is that right? Correct. And so an arrearage accumulates of about $3,300, is that right? The principal amount of the withholding that should have been made. Okay. And so the penalty under the statute relates to the failure to withhold on a contemporaneous basis. Is that fair? In other words, withhold and pay over. And to pay over. So what I'm curious about, and I'll ask Mr. Tate here this question, but is there anything under the statute that allows for the penalty to attach for this time frame of October the 16th through February the 1st? Because as of October the 16th, Caterpillar is very aware of its obligation to have withheld, that it failed to do so, and that there was an arrearage. But no payment was made for three months. And so what I'm curious about is that three-month period. Because certainly when you're talking about a knowing failure to pay the withheld amount, that three-month period arguably could be factored in. That's the point I'm making. And maybe Mr. Tate can address that. And I'm sorry I failed to do so, but I think the answer to your question, if I understand it this time, is certainly from the time the payment should have been made through the time the payment was actually made, the statute provides that penalties are to run. Okay. Thank you. Was I closer? Yes. Thank you. Thank you. It's probably my fault. Well, when you're sitting up there, it's always my fault. That's what I was told when I learned how to argue cases. That's a good approach. There's no doubt in this case that Caterpillar's action thwarted both's ability to receive the full and timely support payments, even including after the period, as Justice Harris points out, when Caterpillar was without question on specific notice of having failed to comply with the order and withheld the proper amount. Nothing more is required to show that Caterpillar acted knowingly under the act, because in the final analysis, there was nothing that Caterpillar did not know. In the final analysis, did Caterpillar pay all the support it was supposed to? Eventually, very late, it did. After having violated the order on numerous occasions and having been put on notice on numerous occasions, and in addition to that, requiring both to go back to court, not once, but twice, to fix the withholding problem and then go back to court on the penalty issue. You referred to Exhibit B, which I believe were the calculations for the additional claim that you presented to the trial court to amend. Is that correct? B is the additional claim, yes. And as I understand that, in looking at it, you're actually seeking $242,700 dollars in penalties for Cass Fair to withhold one cent for 25 pay periods. Correct. Okay, well, in that calculation, I know on February 18th of 2011, your calculations showed that CAD actually paid $175.01, so they made a one cent overpayment instead of an underpayment. Am I reading that correctly? That's what this chart says, but frankly, I don't know whether that's accurate or it's not, because my understanding, based on the evidence that was adduced at trial, was that it was $174.99 in each case. So frankly, I don't have an answer to why that says $175.01. Well, the exhibit then, I don't know if it's accurate, but the exhibit says that because CAD withheld one cent too much, they should be assessed a $9,900 penalty. Am I reading that right? That's what it says, but that's why I think the $175.01 is not a correct number. And the actual number of underwithholdings is, I think, one or two greater than is shown on this chart. This is, as we noted, the final closing argument chart. So there may have been, I don't know what's on this chart other than what I can see there, and I can't explain the $175.01, but you're correct that it is based on a series of withholdings of $174.99 when it should have been $175. Now, not surprisingly, Caterpillar argues that the case is like Thomas, which was decided by this court, and the circuit court relied heavily on Thomas. The key for Caterpillar in the circuit court seems to be that Thomas determined, in light of all the facts of that case, that any possible underwithholding or late payment there was innocent or negligent and was not therefore knowing under the statute. So how does Caterpillar analogize this case to Thomas? It does so, I believe, by setting up a false choice. It claims to have made an innocent mistake and sets that up as if innocent mistake were the polar opposite of knowingly, as used in the statute. But that's not correct, because first the statute says nothing about innocent mistake. It doesn't use that terminology at all. Even Thomas, which does talk in terms of innocent mistake, does so in the context of a fact situation in which the employer clearly made very substantial efforts to satisfy its obligations under the act. In fact, in Thomas, and this is, I think, the really key fact of Thomas, in some cases there the employer made payments to the recipient of child care, even during a paycheck, even when there would have been nothing to withhold. So Caterpillar urges a construction of knowingly, which is essentially equivalent to malicious. No one says that Caterpillar was out to get Pauli, but that's not the standard under the statute. Your Honor, I see that my time has concluded. Thank you very much. If there are no further questions. You have time on rebuttal. Thank you. Good morning, Your Honors. Tim Tye, I'm representing Caterpillar. I will start with what I think is the obvious, and as I put it in my brief, knowingly means something more than negligently. That's what Black's Law Dictionary says. That's what this court has said in cases dealing with this particular exact statute. It just means something more than negligently. And this was the case where there was negligence. Nobody's denying that. Roz Lowery typed the wrong number into the computer. She put the weekly amount instead of the five-weekly amount. What did she have to do with the 90 days for the three-month failure to pay the $3,000? Well, after it was discovered, after Caterpillar's put on notice that the wrong amount was being withheld, they immediately fixed that. They did not immediately pay over the arrears that had been created. Wasn't that kind of a problem? Well, in Dunahee, the woman got her money. She just didn't get it when she was supposed to because they didn't want to use a postage stamp. 90 days, three months is a long time to wait for child support. Well, we have some responses to that. First, the letter that was sent to them did not say that an arrears had been created and that they needed to pay that. So they hadn't been demanded of them. Second, they had no reason to know whether or not the husband, the employee, had paid that himself because that was his obligation. And there was an open question whether or not having not withheld it, they had to pay over money they'd never withheld. They would have just been paying over their own money instead of the money from the ex-husband. Ultimately, they did pay it. I still think it's an open question of whether or not they had the obligation to pay it. To answer Justice Harris's question, I think it's all or nothing. If the initial underwithholdings were done knowingly, then up until that day when the money's finally paid over, there's penalties. If the initial underwithholding was not done knowingly, then there can't be any penalty because the penalty only applies if there's a knowing underwithholding or failure to remit. The arrears was not created by a known violation of the statute, so there can't be a penalty for what wasn't a known violation of the statute. I think Section 50 of the statute potentially- Well, the question, though, is was there a knowing failure to pay the $3,300 for 90 days? Was there? I would say no, because at that point, they did not know whether there really was an arrearage. They didn't know if the husband had paid it. It wasn't clear from the statute. Why didn't they really know if there was an arrearage? Well, the husband could have paid it. Well, was he under this order of withholding? Well, he was under the court order that said he had to pay child support. Well, then, isn't there a means by which to find that out? You're under an order, too. Well, that's right. So you're both under an order, and it's OK to assume that this guy, this fellow is doing it? And if he does it, it's OK because we don't have to comply with our order? Well, I would say there's a couple of things going on here. They hadn't withheld that money from him, so they didn't have it from him to pay. Which was their mistake. Which was their mistake. That's right. So if they make a mistake, and they think somebody else might cure it, then it's OK. I don't think it was nearly like that, Your Honor. You gave me that suggestion, that they don't really know, since they didn't withhold it, which was a mistake, whether or not they need to cure the mistake because somebody else may have cured it for them. Well, they were under a duty to withhold it. They withheld the wrong amount. It's Mr. Pauly who owed the money, not Caterpillar. They didn't have the money from him to give to her at that point. Well, what if he had left the employment at Caterpillar, but prior to when it was noticed that there was an underwithholding, would Cat be able to just say, hey, he no longer works here. We can't withhold it because he's no longer an employee? I don't know, because that's not what they did. They ultimately paid it, because they didn't know what to do with this. So Cat actually paid the support? Yes, it came out of their money. And they weren't reimbursed? No. How do we know that? Well, that was the trial evidence. Caterpillar paid it. There's no evidence that was presented at trial that Mr. Pauly was docked money to make up for this. I'm unaware that he was ever docked any money to make up for this. Of course, he didn't make any mistakes. Right. So your view is, I think, the only question is whether the mistake rose to the level of knowingly. That's what the statute says. If the mistake was done knowingly, then they're on the hook. If the mistake was not done knowingly, then the penalty doesn't come from Section 35. I was going to say that. We didn't do this knowingly, even though we did it. But we did this knowingly, because we hoped that somebody else would rectify it for us. Well, maybe we don't have the responsibility to comply with the order anyway, because we haven't had the chance to withhold it, because we didn't withhold it to start with. It's like a series of mistakes somehow lets everybody walk. Well, the statute doesn't say anything about what happens to an arrearage that's accidentally created. So the statute may help you out of a jam where you delay the payment of the arrearage after it's identified and the employer's been notified of the arrearage, but they fail to pay the arrearage for maybe months, years. The statute itself says if the payer knowingly fails to withhold, then there will be a penalty assessed. And your argument here is that penalty can only be for its failure to withhold, not for its failure to pay an arrearage for an amount that was not withheld. Right. I don't think there's any penalty to pay an arrearage that was accidentally created. Dunahee, they withheld. Well, but Dunahee. They didn't forward it. They didn't forward it. They had it, and they just chose not to send it every week, because they wanted to save postage stamps. Well, that is what would cause a problem for a recipient of child support. Right. The failure to forward in a timely way. Well, we're talking about the arrearage, though, that was accidentally created. The statute doesn't say that. But it's your responsibility. Well, and they ultimately paid it. But can they be penalized for not paying it late? Well, was it late? I mean, how late was it? It was an arrearage that was accidentally created. When is it due? I think the Caterpillar probably has remedies on invoices that are over 90 days old. Caterpillar is a business entity. Wouldn't like very much 90-day delays on substantial amounts of money. And I'm not going to disagree with that. But where in the statute does it say that there is a deadline for paying an arrearage that's been accidentally created? It just doesn't. The arrearage was created. We submit it was created accidentally. The letter that came to Caterpillar didn't say you've created an arrearage that you need to pay. It just said you need to fix the withholding amount. And that's what they did. And then they got sued. And then they came to their lawyers and said, what did we do? And the first thing we said was, well, pay the arrearage. And that's the easy thing. And so they did. And Section 50 of the statute, I think, could potentially be something that would cause a penalty for what we're talking about here, this failure to pay the arrearage that was accidentally created. But Section 50 has a willful standard. And the penalties are significantly less. They don't have the $100 per day accrual. So it is my memory of this case, and my understanding as it is here before us, this is all or nothing. If it was done knowingly from the start, then they get the full penalty up until the day that accidentally, up until the day the arrearage was created. If it wasn't done knowingly, then there's just no penalty. So that's, I hope, those answer your questions. I would like to make a couple other points about the trial court notice that there's a presumption in the statute. And the trial court also noticed that the presumption of knowingly applies to people who withhold, but then fail to remit. And what I would submit to this court is that that demonstrates what the General Assembly was really trying to stop, or the evil that was being addressed by the statute. There's an employer who will take the money out and then sit on it. Maybe put it in the bank account so they can earn interest on it. Or at the end of the month, they've got bills they've got to pay. And they say, well, I'll just go ahead and use this money, and I'll make up for it next month. That's what interferes with parents getting their child supported, is the employer taking it out and holding it for himself and not remitting it. Well, that may be your suggestion of the evil. I would view it from the opposite perspective. No matter who the employer is, it is the parent deserving of child support who doesn't receive it in a timely way. That's the evil that the statute is directed at. I don't think there were any lobbyists over there trying to prevent large corporations from earning interest on money that they're slow in paying. Maybe there were. I think it would probably be the opposite. Well, the General Assembly created a presumption for what I'm talking about, but not for what happened in this case. There's no presumption of knowingly for what happened in this case. Well, what's the mischief? That's a rule of statutory construction, too, the mischief rule. Was the mischief businesses retaining the money to make interest on it? Or was it the mischief that child support is simply not as important as there are other business practices? Well, I suppose the mischief was that some people would just ignore these and not do it, and other people would do it but keep it for themselves and hold on to it for a while. That's not this case. How could they ignore it? There was testimony. They have many thousands of employees. They have a system. Roz Lowry was the most senior person in that department. She literally helped write the program for computers. She was the one who entered it. She just typed in the wrong number. It was an unfortunate mistake. I mean, is that causing any problem? You've got thousands of employees, and you've got one person responsible? Well, there's more than one person in the department. She just happened to be the one who was entering the numbers that day. That's why we pinned it down, because it was her code that was used on the computer that day. So I don't believe she had any independent memory of doing it at her testimony. A few more points I'd like to make. As a surreply to a case that was put in the reply brief, it's the Indian Prairie case. The suggestion was that you can't use the same definition of knowingly in a civil statute that would be used in a criminal statute. And I don't think that's what that case stood for. That case stood for the rather unremarkable proposition that a duty can arise from a statute, from a criminal statute. The best analogy that we're all familiar with is a traffic violation. If I run a stop sign and hit somebody, the person suing me for negligence can say that the basis of the duty came from that statute saying I had to stop at the stop sign. The person suing for negligence doesn't also have to prove beyond a reasonable doubt that I violated that statute, because that's the criminal side of it. The civil side is just negligence and preponderance of the evidence. In Indian Prairie, there was a statute that made the defendants publish notice of an election at a certain time. They were negligent about doing it. So the plaintiff sued, saying you were negligent. You had a duty under the statute, which is a criminal statute, and you've been damaged. And the defendants tried to say, well, it's a criminal statute, and it says we have to act knowingly to be prosecuted criminally. So you have to prove we acted knowingly. And of course, the court said, no, this is a civil case. We're not trying to prosecute you criminally. We're just showing that you acted negligently. So what that case really says is that acting knowingly is a higher standard, a bigger burden, than acting negligently. This particular statute comes right out and says before you can assess civil liabilities, you have to prove knowing behavior. So that case doesn't say you can't have the same definition of knowing in the criminal world and civil world. And he, on the trial court, I think did a fantastic job in his order. He went through what knowingly means. And it means, at the very simplest, something more than negligence. And he went on to find, as a matter of fact, that's what happened in this case. It was just negligence. It didn't rise to the level of knowingly. To respond to a couple of more points that were made during the direct here, talking about courts enforcing court orders. Yes, they could always enforce court orders. They didn't need this statute to force employers to honor withholdings. But I would be happy to stand corrected, but it's my understanding that before you can find someone in contempt, they have to act willful and confidentiously. Someone who negligently violated a court order, I don't think can be punished for that. They can certainly be compelled to fix their behavior and go along under the order, but not to be punished for it. Talking about the small claims cases, Brett Brown, who's a lawyer in Decatur, works for a collection agency. He was subpoenaed. He testified there were, I think it was seven cases out of many thousands, where he had served wage deduction interrogatories on Caterpillar. And they were late responding to the wage deduction interrogatories. Therefore, a conditional judgment was entered. But then before an actual judgment was ever entered, Caterpillar responded to the interrogatories. That evidence came in. The trial court considered it, and he said, I don't see how this has any seven cases out of many thousands over many years, where they were late in responding to interrogatories, how that can have any bearing on whether or not they intentionally or deliberately failed to withhold the right amount from this particular point of view. To your honors, those are my points. The question about what happens to the accidentally created arrearage, I don't remember it being an issue at trial. I remember talking about it before trial with my clients and my co-counsels. But I don't think it came up. I believe our ultimate conclusion was, and what I think the law is, is that it's all or nothing. The statute just doesn't say anything about what happens when an arrearage is accidentally created. What it says is that if you knowingly fail to withhold and remit, don't remit something that you withheld, then you get penalized. So unless there are any other questions, your honor, I'll seek to move forward. Thank you. Your honor, very briefly on rebuttal. Counsel asked the pregnant question in his argument, where in the statute does it say that there's a deadline for paying an arrearage? Statute tells us what the deadline for withholding and paying child support is. Absolutely unambiguous. And if the employer fails to do that, the penalties attach from the date when that payment should have been made. Justice Necht asked the question, what's the mischief? The statute was intended to address. The mischief here is obvious. The child support recipients and children would not receive their payments on time and in full. And in this case, clearly, Pauli did not. And there's no one to look to for that other than Caterpillar. We've been through now, in this case, a trial, briefing on the appeal, and oral argument on the appeal, which is now coming to a close. And we still have not heard Caterpillar state one thing, one fact that it needed to know to withhold properly that it didn't know. Whatever acting not knowingly means, it must mean, in a minimum, not knowing something material that one needed to know. And that's not the case here. Caterpillar hasn't told us one single thing that would allow it to say it did not act knowingly. It knew everything it needed to know. It just didn't pay attention to its own records, its own files, its own processes, and make sure that it did what it was obligated to do under the order. Thank you. Thank you, counsel. I take this matter under advice.